Thank you, your honors. My name is David Ness. I represent the petitioner and defendant in this case, Seth Muth. Section 2255 provides an escape hatch that allows a prisoner to file a habeas petition under 28 United States Code section 2241 if the remedy provided by section 2255 is inadequate or ineffective to test the legality of his detention. As this court has held, the petitioner can qualify for the escape hatch if he can show a claim of actual innocence and show that he has not had an unobstructed procedural shot at presenting his actual innocence claim. Here, Mr. Muth can satisfy both. First, as outlined in the brief, section 2255 was in fact inadequate to test the legality of his detention. The claim which he is presenting, that is a claim of actual innocence due to an intervening Supreme Court decision, the Watson case, didn't arise until three or four years after. How does he qualify under that case? It's use of a gun if you use a gun to acquire drugs, isn't it? It's use of a gun if, in the transaction, you are the person that has the gun that trades it. In his plea colloquy, it says here I distributed approximately 1.5 grams of methamphetamine to Joe Michael. In exchange, Joe Michael gave me a Norinco SKS assault rifle. The facts are actually that Joe Michael delivered the meth to me in exchange for the rifle. I delivered the rifle to him. Right, Your Honor. As outlined in the brief, however, that's not what he was charged with. Sure it is. That was count two. Counts two and three were, it seemed to me, in the alternative. I mean, one scenario was that he was the giver of the rifle and one was that he received the rifle. And obviously they weren't both true, but the one that wasn't true was dismissed, wasn't it? But if you read count three of the indictment, count three of the indictment specifically references the charge in count two. It uses the language that he distributed a mixture containing methamphetamine as charged in count two. So count three clearly references count two. And that, by the way, was- But if they were duplicative, there would be no reason to have count three. It seems to me a very strained reading of the two to require them both to be identical. But I guess I don't understand why you would want to read count three to be the same as count two, which is what you seem to be doing. No, because they charged different crimes, Your Honor. Count two was an actual distribution charge. Count two charged him with distribution of 1.5 grams of methamphetamine. Count three, then, was the 924C charge that charged him with using a gun during the drug transaction. Okay, I had my two counts backwards, then. Well, it doesn't count two. Let's see. Count two says that in July he did knowingly and so on distribute and did aid in the distribution of approximately 1.5 grams of meth and so on to Joseph Michael. So you're reading that as saying he is the one that gave the drugs to Michael? And Michael gave him the gun? That is correct. And that's the way in the offer of proof and in the plea agreement as well that the government understood these charges. Well, that is clear. But then I wasn't at all clear why the, I guess, apparently defense counsel indicated that the clarification was at his and his client and Mr. Moose's insistence that they're walking themselves by that plea colloquy right into a proof of use of a gun even after the Supreme Court decision. And I find it very confusing on this record as to what the strategy was. I think at the time, you know, Watson hadn't yet been decided. No, I understand. This court as well as most other circuits were very clear in their holdings that giving drugs for a gun was in fact a violation of 924C. I think there was a minority of the circuits and exactly why except to, I don't know, I wasn't there. But nevertheless, as I argued in the brief, and I think it's pretty clear, I don't think that whatever Mr. Moose said could have in any way amended this indictment or changed the charge. But then Count 3 says that he's the one, says Seth Mooth knowingly and unlawfully used or carried a firearm during and in relation to a drug trafficking crime as charged in Count 2. Now, the Count 2 is a drug trafficking crime. Right. Okay. But the language of Mooth being the one who knowingly and unlawfully used or carried a firearm sounds like he's the guy who brought the gun to the transaction and that... Well, it says that, yeah. And it says he exchanged the Naracco firearm for approximately 1.5 grams. That doesn't, the exchange doesn't say who's the giver and who's the receiver. In Count 3. In Count 3. It doesn't say except that when the indictment says as charged in Count 2. But that's referring to a drug trafficking crime. All that does is define the drug trafficking crime that the gun is in relation to. That's the way I read it. Right. And the drug trafficking crime that the gun is used in relation to is Seth Moose's distribution of 1.5 grams of methamphetamine. Why would he bring a gun? And I guess I don't quite... Do you agree that Count 3 is best read or most logically read is that he is the one that brought the gun? No, respectfully, I wouldn't agree. Even though it says the defendant, Seth Moose, exchanged the Naracco firearm for 1.5 grams of meth. That doesn't sound like he was the holder of it? It's not well worded. But because Count 3 specifically references Count 2 and Count 2 is a distribution charge, the drug trafficking crime alleged in Count 3 has to be the distribution charged in Count 2. Well, let me attack this in a different way or ask in a different way. In the plea colloquy, he says, Joe Michael delivered meth to me in exchange for the rifle. I delivered the rifle to him. That's what your client said. Those being the facts, I don't understand how there can be an actual innocence claim because that is a crime. That's still a crime, even after Watson. But that isn't what he was charged with. I guess that we're going to go round and round with that because I read the indictment as charging him with exactly what he said he did. I guess I can't see that with reading the indictment. I would argue that the indictment is not well drafted, but as I've stated, and we've gone round and round, I think Count 3 does reference Count 2. My understanding of the indictment was the understanding that the government proffered in its offer of proof and throughout. Well, let me ask this in a more sort of abstract way. I know you won't agree with all the premises of this question, but it's clear that the plea agreement was not in accord with what he said in open court. It went the other way. Right. In a situation in which a plea agreement has the wrong facts and someone in open court corrects it to say, no, these are the actual facts, this is what I did, shouldn't the statement of what the facts were control over a mistake in the plea agreement? I think to the extent that the mistakes aren't substantive, and in saying substantive, I mean it goes to the nature of the charge in the indictment. But what was he pleading to then? I have the same question. If he pled, how could the court have accepted his plea to something he wasn't charged with? And the court didn't ask any questions when he made that correction. I would only say in defense of the district court is at the time it didn't matter which way this transaction went. So in the district court's mind, it just didn't matter who exchanged what. But I guess impartial answer to you, Judge Graber, even looking at the Boozley decision, Mr. Muth was never correctly informed of the charge against him. The indictment says one thing, the plea agreement says another thing. He pled guilty apparently to something else, whereas plea colloquy indicated that he pled guilty to something else. The plea in this case wouldn't have been knowing and intelligent to begin with. So that's a problem that goes back to the change of plea hearing. So I guess unless the court has any questions, I'll just preserve my time. Yeah, you might want that for rebuttal then. Okay, thank you. We'll hear next from the government. Good morning. May it please the court, Bishop Grewal on behalf of the United States. The question before the court this morning is whether it even has jurisdiction to hear this appeal. It is the government's position that Mr. Muth's 2241 petition is in fact a disguised 2255 petition. You have to answer the question at the outset, don't you, whether he's actually innocent? Not to determine whether it's a disguised 2255 petition or not, because he did have an unobstructed procedural shot here to raise his claim. And therefore, for that reason, his 2241 has to be considered a disguised 2255. How could he raise the claim if the case upon which he relies was a later intervening event? Certainly. 2255F3 extends out the statute of limitations when there's a right that's been asserted that's a new right that's been recognized by the Supreme Court and is later made retroactive. So when Watson was decided, which is the case he's relying upon, he then had a year after Watson based on 2255F3 to file a 2255. Was Watson made retroactive? Because it's a substantive law change that it basically said some criminal activity is no longer criminal. Under Boozley, Boozley explains that any time you have a substantive decision, it's automatically made retroactive from that point forward. What case determined that it was sufficiently substantive that it was retroactive? Was there a judicial ruling that Watson was to be applied retroactively? There wasn't specifically a Supreme Court ruling, but as the Thomas decision from the Fourth Circuit that we cite points out, once you had this matter, which it considered to be a substantive matter, any court, a district court or an appellate court, could consider it retroactive right at that point. And so if he filed a 2255 petition because it was a substantive matter, it would have been retroactive the day it was decided. Let's make clear from the Thomas decision, his only response to that is claiming that this court's Alamalo decision counsels that this court shouldn't follow Thomas. Alamalo and Dorsenvall and Trisman that he cites all deal with second or successive petitions. So they're actually governed by 2255H, which requires a new constitutional right, which a change in the statute wouldn't be. That's why in those cases all dealt with statutes, not with constitutional rights. Therefore, they were barred by 2255H2. Mr. Muth had not filed a 2255 petition before, so he was not under H2. It wouldn't have been a second or successive petition for him to file it. Therefore, as this court knows, the only question would be whether the statute of limitations allowed him to. And 2255F3, under the Thomas decision, under the plain reading of the statute, clearly allowed him to file a petition within that year after the Watson decision. For that reason, this court could decide without getting to the actual innocence that this is a 2255 petition, which means that he then needs to make a substantial showing of a denial of constitutional right to get a COA from this court. And the right that he's presumably claiming is his actual innocence, that if he's actually innocent he can't be held in jail. That could maybe be a sustained due process claim, a procedural due process claim, or even an Eighth Amendment violation. So do we have the option of skipping the difficult question as to whether or not it's appropriately characterized initially as 2241 or 2255 and going to the analysis of whether there's actual innocence? Because actual innocence factors into all of those, I suppose, if for judicial efficiency this court wanted to do that, it could. The one thing that might make it easier actually to decide that it's a 2255 claim is then this fact that you're under this question of whether he's made a substantial showing, and it's quite clear he hasn't made a substantial showing of actual innocence. I was just going to say, if this court was going to go the reverse way, though, and say that he's actually innocent, it would still need to go through the procedural analysis to see, in fact, if he could get under 2241 or if, in fact, a COA was required. Are we allowed to – the district court didn't rule on that basis? It did not. The District of Minnesota had transferred it, assuming it was a 2255, and Judge Sandstrom said, well, 2255, 2241, Mr. Moot's not actually innocent. Okay. Now, under Hernandez's decision in 2000, I thought it said that under these circumstances, because it's jurisdictional, that the district court has to make that decision, and wouldn't we have to remand them to the district court to decide it's actually a – because a disguised 2255, because otherwise we won't have – there won't be a jurisdiction. The district court wouldn't have had jurisdiction ever to reach the merits. Because they went ahead and – so because the courts considered this to be a – it was transferred as a 2255 case, if it was, in fact, a 2255 case, the district court would have had authority to rule on it if it was basically a 2255 case. If it was a 2241, then it wouldn't have had jurisdiction. It would have had to go back. I'm not familiar with the Hernandez case. I'm not sure it was briefed, but I can certainly look into it and offer something else. Yes. If necessary. 204 F3rd. Okay. 204 F3rd 861. 861. 2000 procuring. Certainly. That's just my understanding. I haven't parsed it now to – in light of what you just said. As to his actual innocence claim, as we've said, he needs to make a substantial showing because he is in 2255 land. He can't do that and he hasn't done that. First of all, because he pled guilty to count three. Count two was dismissed. The language referring to count two simply is saying, well, the predicate crime here is distribution, like the crime in count two was distribution. It's not saying that the conduct is the same as in count two. And that's because it has very specific language at the end saying what the conduct was, and so the specific cast of control is there. But that's not the way the plea agreement and the government came in. It wasn't the government who corrected it. It was Mr. Muth. So apparently whoever – were you the AUSA on this? I was not. I was not. The government apparently read it the way he's now arguing it should have been read. Right. And his burden – and had this been on direct appeal, that might have been an interesting issue. But because he's on – dealing with either 2255 or 2241 of habeas, he's got to show actual innocence, which he can't show because of that. The indictment is clearly not drafted in the most clear manner, but the best reading of count three has to be that simply it's saying distribution was the predicate crime. He makes an argument in his reply brief that if in fact the gun went for the drugs, well, then we must be claiming that he was actually – or he didn't give drugs to anyone. He received the drugs, and therefore he claims that we're amending the indictment. The predicate crime here is still distribution. 18 U.S.C. 2 is implied in every charge. Was that argument that was in the footnote in the reply brief raised to the district court? It was mere possession. Did he – did Mr. Muth raise it in – Right. I don't believe that he raised it before the District of Minnesota. There was no briefing before the District of Montana. I don't think it was in his petition, so I don't – I would guess that he had waived that. But even if he hadn't, the argument fails because, as I said, 18 U.S.C. 2 is implied in every charge, and therefore even if the transaction went the other way, because he had abetted or caused it, he can be found as a principal of having distributed. So we don't have to amend the indictment, as he claims. His only other argument, then, is that the language in the offer of proof, which was in the plea agreement – that's basically the same language being referred to twice because the offer of proof was put into the plea agreement – and the prosecutor's statements show that he's actually innocent. But from his own statements at the plea colloquy, which is what the court has to rely upon when it's determining whether he's met the charge, it's clear that he's not, in fact, actually innocent. He admitted that the transaction went the other way. He also admitted that he was aware that a decision like Watson could come down later because there was a circuit split and this counsel was making clear to the court, you know, if it had gone the other way, we wouldn't be bringing this – we wouldn't be agreeing to this because the transaction went the other way and if it weren't illegal, obviously we wouldn't be pleading guilty. So those are the only arguments that he raises. Because none of those establish his actual innocence, they don't make a substantial showing of a denial of constitutional right. A COA should be denied. The one other point I would make, because his – he doesn't make a showing of a denial of constitutional right, his actual innocence claim appears to be a freestanding actual innocence claim, which this court noted, and we did not put this in the briefs, in Carriager v. Stewart, 132 F. 3rd 463, 476 to 477. For a freestanding claim, the standard is even higher than this boosley standard of more likely than not that no reasonable juror would have found him guilty. So it's quite clear he wouldn't have done that, but it's also clear, I think, on the record that he can't even meet the boosley standard of more likely than not that no reasonable juror would have found him not guilty. Counsel, on the jurisdictional issue, do we have jurisdiction to determine that if this is not a bona fide 2241 petition, by default it's a 2255 petition, and either untimely or doesn't have a COA or whatever the requisites are for that. Will we have jurisdiction to make that determination? I believe this court would. It's done it in a number of decisions to this point, found something to be a disguised 2255, and therefore stated that a COA is needed. And several of those decisions are cited in our briefs, the ones talking about the standard for a disguised 2255. I believe I think the Harrison case taken with the Stevens case, the Ivey case, those cases taken together show that this court, if it decides that this is a disguised 2255, can determine that a COA is therefore required for the appeal to go forward.  Unless there are further questions from the court, I'm happy to cede the remainder of my time. I don't think there are any further questions. Thank you. Thank you, Your Honor. Mr. Ness, you have some time remaining. Thank you. With respect to the government's argument that the statute of limitations would have begun to run when the Watson case was initially decided, as counsel indicates they rely on Section 2255F3, which begins that the statute of limitation would begin to run from the date on which the right was asserted was initially recognized by the Supreme Court. The problem with that argument is that Watson involved an interpretation of a statute. It didn't involve the recognition of a new right. The only constitutional or the only right really that's involved in this case is whether or not someone can be constitutionally convicted of something that's not a crime. That's not something that's been initially recognized or newly recognized by the Supreme Court. That's why none of the tolling provisions under Section 2255 would have applied to Mr. Meath. That's why he falls outside of Section 2255 and into the savings provision in Section 2255E and why his case had to be brought under Section 2241. Then I guess going back, I think Judge Graber, you referenced a footnote that was in one of my briefs. To answer your question, that wasn't raised in the district court. That was something I guess I observed as I was looking at this. I think that goes back to the very question of whether or not Mr. Meath was correctly advised as to the charge against him. I don't think he was because at the time, maybe I shouldn't put it in these terms, but the Ninth Circuit as well as other circuits were wrong as far as the reach of Section 924C. There was also some questions about remanding this case. I would suggest that a remand would at the very least be in order here. I think that there are a couple of things that could and should be looked at. If the question, as I understood my colleague's inquiries, the question on remand would simply be for the district court to determine whether this is really a 2241 or a disguised 2255. If that's the only question for remand, why couldn't this court look at that legal issue and decide it just as easily as the district court? On just simply the legal issue? I think the answer is Harrison said because there's no jurisdiction. And even Harrison, the counsel cited, I'm just looking at it again, it's saying it's relying on Hernandez. I meant to say Hernandez. I'm puzzled by this. I had the same question Judge Graber did. That's why I was wondering and why I asked the question. But now I'm looking back and Harrison at the government's citing for the proposition says that the sentencing court has to first determine whether it has jurisdiction. And as I understand, Hernandez said it was necessary because otherwise if they don't decide there's jurisdiction, then we don't have jurisdiction. So, you know, I think this is confusing enough. I'm not offering that as an answer, but I'm saying the two cases that seem relevant here are those two cases. Well, how do we get the other jurisprudence then that talks about our decisions on whether it's 2241 and 2255? This is kind of a procedural conundrum. I don't know. This whole area is talking to my colleague. I'm happy to admit I'm confused. Nevertheless, I think under the Almalo decision, Mr. Moos should be allowed to proceed. And so I would just ask the court to allow this case to proceed. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate the arguments of both parties.
judges: Graber, Fisher, Rawlinson